**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

CASE NO. 24-CV-21192-MOORE/Elfenbein
(CASE NO. 22-CR-20234-MOORE)

**YVES DELICE**,

      Movant,

 v.

**UNITED STATES OF AMERICA**,

      Respondent,

_____/

<u>**REPORT AND RECOMMENDATION**</u>

**THIS CAUSE** is before the Court on Movant Yves Delice's ("Movant") Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence (the "Motion"), ECF No. [1], filed on March 10, 2024.[1]   After reviewing the Motion, the Honorable K. Michael Moore ordered Respondent United States of America (the "Government") to show cause.  *See generally* ECF No. [4].  The Government complied with Judge Moore's Order and filed a Response to his Order to Show Cause (the "Response") on June 6, 2024, ECF No. [8], to which Movant filed a Reply (the "Reply"), ECF No. [12], on June 16, 2024.  After considering the Parties' filings, Judge Moore referred Claim 1 of the Motion to the undersigned for an evidentiary hearing and a Report and Recommendation.  *See generally* ECF No. [13].  After holding an evidentiary hearing and reviewing the record and relevant law, the undersigned respectfully recommends that Judge Moore

---

[1] "Under the 'prison mailbox rule,' a *pro se* prisoner's court filing is deemed filed on the date it is delivered to prison authorities for mailing."  *Williams v. McNeil*, 557 F.3d 1287, 1290 n.2 (11th Cir. 2009) (citations omitted).  "Absent evidence to the contrary, [the Court assumes] that a prisoner delivered a filing to prison authorities on the date that he signed it."  *Jeffries v. United States*, 748 F.3d 1310, 1314 (11th Cir. 2014) (citation omitted).

**DENY** Claim 1 of Movant's Motion.

## I.      BACKGROUND

### A.      Factual and Procedural Background

On June 2, 2022, a federal grand jury sitting in the Southern District of Florida indicted Movant with seven counts of Hobbs Act Robbery, in violation of 18 U.S.C. § 1951(a) (Counts 1, 3, 5, 7, 9, 11, and 13), and seven counts of brandishing a firearm in furtherance of a crime of violence, in violation of 18 U.S.C. § 924(c)(1)(A)(ii) (Counts 2, 4, 6, 8, 10, 12, and 14). *See* CR ECF No. [6] at 1-9. [2]   Movant initially entered a plea of not guilty as to the charges in the Indictment. *See generally* CR ECF No. [8].  Following his plea of not guilty, Kathleen Mollison of the Assistant Federal Public Defender's office entered a Notice of Assignment in Movant's criminal case. *See generally* CR ECF No. [11].  After reviewing the evidence in his case with Ms. Mollison, Movant informed the Court that he wished to change his plea. *See generally* CR ECF No. [13]; CR ECF No. [15].

Upon Judge Moore's referral, the Honorable Lauren Fleischer Louis held a change-of-plea hearing on September 20, 2022. *See* CR ECF No. [18].  However, during the September 20, 2022 hearing, Movant indicated to Judge Louis that he did not have a chance to review all the evidence the Government had against him, which prompted Judge Louis to continue the hearing to allow Movant sufficient time to review all the discovery in his case. *See* CR ECF No. [45] at 8:11-12:16. On October 12, 2022, the Parties appeared again before Judge Louis for a change-of-plea hearing. *See generally* CR ECF No. [22].  However, Judge Louis decided to reset the hearing due to Movant's inability to confer with Ms. Mollison because she was ill and unable to enter the

---

[2] The undersigned cites filings in Movant's criminal case, 22-CR-20234-KMM, using "CR ECF No." and filings in Movant's civil case using "ECF No."

courthouse. *See* CR ECF No. [44] at 2:16-18, 3:3-21.

Following the October 12, 2022 hearing, Movant filed a Motion for Substitution of Counsel, claiming that Ms. Mollison was not acting in his best interests as she had not visited him in prison to review the discovery he received from the Government. *See* CR ECF No. [25] at 1. After receiving the Motion for Substitution of Counsel, Judge Louis set the matter for hearing. *See generally* CR ECF No. [26]. During the hearing on the Motion for Substitution of Counsel, Movant again expressed his belief that Ms. Mollison was not acting in his best interests and that his relationship with her was broken beyond repair. *See* CR ECF No. [42] at 5:12-22. After discussing the issue at length with Movant, Judge Louis ultimately found that he failed to show good cause for the replacement of Ms. Mollison and, thus, denied Movant's Motion for Substitution of Counsel. *See id.* at 12:16-13:9; *see generally* ECF No. [28].

The Parties again appeared before Judge Louis on January 25, 2023 for a change-of-plea hearing. *See generally* CR ECF No. [29]. At the outset of the hearing, Ms. Mollison confirmed that Movant was prepared to enter a change of plea. *See* CR ECF No. [41] at 2:16-20. During her colloquy, Judge Louis confirmed that Movant (1) could read and write, *see id.* at 7:17-19; (2) never was treated for mental illness or addiction to any type of narcotic, *see id.* at 7:20-22; (3) was not under the influence of any intoxicant or drug at the time of the hearing, *see id.* at 7:23-8:4; and (4) was thinking clearly and fully grasped the gravity of his change-of-plea hearing, *see id.* at 8:5-7. Movant indicated that he was "fully satisfied" with Ms. Mollison's representation in his criminal case. *Id.* at 10:3-5. Later in the hearing, Judge Louis discussed with Movant the appeal waiver in Paragraph 11 of his Plea Agreement. *See id.* at 15:15-16:3; *see* CR ECF No. [31] at ¶ 11. Movant confirmed that he understood that the appeal waiver meant that he could only file an appeal in certain limited circumstances, such as "if [his] sentence exceed[ed] the maximum permitted by

statute or [was] the result of an upward departure or upward variance."  CR ECF No. [41] at 15:21-22, 15:15-16:3.  Upon concluding her colloquy, Judge Louis accepted Movant's guilty plea to Counts 2, 8, and 12 of the Indictment.  *See id*. at 23:11-19, 24:1-16.

On March 30, 2024, Judge Moore held Movant's sentencing hearing, during which he sentenced Movant to a 252-month term of imprisonment and ordered him to pay restitution in the amount of the victims' losses.[3]  *See* ECF No. [51] at 11:18-24.  Before ending the sentencing hearing, Judge Moore informed Movant that he had the right to appeal his sentence.  *See id.* at 13:8-11.

On March 10, 2024, Movant filed his Motion, ECF No. [1].  The Motion raised the following five grounds for relief, which argued Ms. Mollison provided constitutionally ineffective assistance of counsel when she (1) failed to pursue a direct appeal when Movant directed her to do so, *see* ECF No. [1] at 4; ECF No. [1-1] at 6-7;  (2) allowed Movant to enter an involuntary guilty plea, *see* ECF No. [1] at 5; ECF No. [1-1] at 8-11;  (3) failed to seek a mental health evaluation on Movant's behalf, *see* ECF No. [1] at 7; ECF No. [1-1] at 12-13; (4) failed to challenge the constitutionality of Movant's sentence under the "First Step Act, Section 403(a) in regards to Title 18 U.S.C. § 924(c)(1)(c)[,]" ECF No. [1] at 8; ECF No. [1-1] at 14-16; and (5) failed to challenge the Government's use of a social media music video against him, *see* ECF No. [1] at 9; ECF No. [1-1] at 16-18.

On April 12, 2024, Judge Moore ordered the Government to file a response to the Motion.  *See generally* ECF No. [4].  On June 6, 2024, the Government filed its Response in opposition in which it argued that the Court should deny each of the Motion's five claims.  *See* ECF No. [8] at

---

[3] Judge Moore sentenced Movant to an 84-month term of imprisonment as to Counts 2, 8, and 12 and ordered that Movant serve each sentence consecutive to one another.  *See* ECF No. [51] at 11:20-22.

1.  However, when arguing the merits of Claim 1 of the Motion, the Government stated that it did not object to the Court granting an evidentiary hearing on the Claim.  *See id.* at 7-9.  The Government's concession concerning the need for a hearing on Claim 1 prompted Judge Moore to refer the Claim to the undersigned for an evidentiary hearing.  *See* ECF No. [13].  In compliance with Judge Moore's Order of Referral, the undersigned appointed CJA counsel to represent Movant and scheduled an evidentiary hearing for September 23, 2024.  *See generally* ECF No. [15]; ECF No. [16].

### B.   The Evidentiary Hearing

The Parties appeared before the Court on September 23, 2024 for an evidentiary hearing. During the evidentiary hearing, the following three witnesses testified: (1) Movant, Yves Delice, (2) Movant's mother, Anite Delice, and (3) Movant's former attorney, Ms. Mollison.  *See* ECF No. [27] at 3.

#### 1.   *Testimony of Movant, Yves Delice*

On direct examination, Movant testified that, on the day of his sentencing, he pulled Ms. Mollison aside to communicate his desire to file an appeal.  *See id.* at 12:12-20.  Movant claims that Ms. Mollison heard this directive but responded that he had no grounds to appeal his sentence. *See id.* at 12:12-16.  In addition to this comment, Movant testified that he sent a follow-up email informing Ms. Mollison that he wanted to file an appeal and that his mother called Ms. Mollison to ask her to file an appeal on her son's behalf.  *See id.* at 13:10-16.  Movant testified that Ms. Mollison did not respond to his email and that she told his mother he did not have grounds to file an appeal. *See id.* at 12:12-23.

A week after his sentencing, Movant met with Ms. Mollison to discuss the restitution amount that Judge Moore left unresolved during his sentencing hearing.  *See id.* at 14:10-17.

During that meeting, Movant testified that he again directed Ms. Mollison to file an appeal, but she again told him that he had no grounds to file an appeal.  *See id.*  Movant stated that Ms. Mollison in no way indicated that she would file a notice of appeal on Movant's behalf but instead continued to reassert her position that Movant had no grounds to do so.  *See id.* at 14:22-15:2.

Movant then testified that he only received his full discovery two days before his final change-of-plea hearing.  *See id.* at 15:13-16.  He stated that two days was not enough time to review the discovery before entering his guilty plea, *see id.* at 15:17-25, and that he was not satisfied with Ms. Mollison's performance, *see id.* at 16:1-11.

During the Government's cross-examination, Movant testified that, after Ms. Mollison explained the Government's plea offer to him, he thought the Court would only sentence him to seven years in prison for pleading guilty to Counts 2, 8, and 12 of the Indictment.  *See id.* at 22:20-23:7, 23:19-24:2.  After making this statement, the Government pointed out that Paragraph 3 of his Plea Agreement stated that "[Movant] underst[ood] and acknowledges that as to Counts 2, 8, and 12 the Court must impose a mandatory minimum of seven years consecutive to each other on each count" and "[t]he Government and the Defendant agree[d] to recommend a joint total sentence of 21 years imprisonment."  *Id.* at 24:11-20.  Movant acknowledged that he read and agreed to Paragraph 3 of the Plea Agreement but testified that he only did so because Ms. Mollison assured him that he would only be sentenced to seven years.  *See id.* at 24:24-25:3; 34:24-35:5.  Movant claims that, had he known he was subject to a 21-year sentence, he would have gone to trial to prove his innocence.  *See id.* at 25:2-3; 32:5-11; 38:5-23.

The Government then asked Movant if he had a copy of the email he claimed he sent Ms. Mollison requesting an appeal.  *See id.* at 36:23-37:2.  Movant testified he did not because the computer system he used to send the email deletes all emails after six months.  *See id.* at 37:3.

When the Government asked why Movant did not save his correspondence with Ms. Mollison, he explained that Ms. Mollison said she would go speak to him and that he did not know the computer system would delete all email correspondence older than six months. *See id.* at 39:5-18.

On redirect, Movant testified that the computer on which he sent and received emails was a public computer provided by the Bureau of Prisons. *See id.* at 40:3-9. Next, Movant testified that, while he waived his right to appeal his sentence, that waiver did not cover the Court's denial of his Motion for Substitution of counsel or the issues involving his inability to review his full discovery in a timely manner. *See id.* at 40:15-41:15. Movant then reiterated his belief that, by signing the Plea Agreement, he would only receive a total term of imprisonment of seven years for the three counts to which he pled guilty. *See id.* at 41:19-42:5.

### 2. *Testimony of Movant's Mother, Anite Delice*

On direct examination, Ms. Delice testified that she saw Movant speak to Ms. Mollison after Judge Moore sentenced him and that Movant called Ms. Delice later on the day of his sentencing and said that he asked Ms. Mollison to file an appeal. *See id.* at 44:11-45:8. Ms. Delice also testified that she went to see Ms. Mollison in person with her husband, but Ms. Mollison said she would not file an appeal and that, in any event, Movant would not be successful as he has no grounds to appeal. *See id.* at 45:9-46:19. Ms. Delice stated that she believed Ms. Mollison was appealing Movant's case based on later conversations she had with Movant. *See id.* at 47:10-14.

During the Government's cross-examination, the Government asked Ms. Delice why she believed Ms. Mollison was filing an appeal if she (Ms. Mollison) said she would not do so and that her son had no grounds to file an appeal. *See id.* at 48:22-49:5. Ms. Delice responded that she believed Ms. Mollison would file the appeal because she was the public defender. *See id.* at 49:6-13. But then, Ms. Delice testified that she later realized Ms. Mollison had no intention of

filing an appeal, and at that point, she tried contacting Ms. Mollison by phone, but Ms. Mollison did not answer her calls. *See id.* at 49:14-25.

### 3.   *Testimony of Movant's Attorney, Kate Mollison*

Ms. Mollison, the Government's only witness, was the last witness to testify. *See id.* at 50:15-51:10. Ms. Mollison testified that she has approximately ten years of experience practicing law and spent all but one of those years practicing criminal law as a public defender. *See id.* at 51:20-52:10. Ms. Mollison stated that she has represented hundreds of criminal defendants during her time in practice and that Movant was one of those defendants. *See id.* at 52:11-21. Ms. Mollison testified that she remembered Movant and the details of his case well, accurately recalling the number and nature of the criminal counts he faced in the Indictment. *Compare id.* at 53:2-12 (testifying that Movant faced "seven Hobbs Act robbery counts and seven 924(c) counts"), *with* CR ECF No. [1] at 1-9 (indicting Movant with seven Hobbs Act robbery counts and seven 924(c) counts). Ms. Mollison stated that she reviewed the full discovery production with Movant and the potential consequences of rejecting the Government's plea offer and electing to proceed to trial on all 14 Counts of the Indictment. *See* ECF No. [27] at 53:16-54:4. Ms. Mollison testified that at no point did Movant express his desire to proceed to trial. *See id.* at 54:15-17.

Ms. Mollison stated that, in her conversations with Movant, she shared her opinions with Movant on the strength of the Government's evidence against him, but she told him the decision to accept a plea offer was his alone. *See id.* at 54:8-14. Ms. Mollison testified that the Government's initial plea offer required Movant to plead guilty to "three counts of 924(c)" and to one count of Hobbs Act robbery, but she managed to negotiate a plea offer with the Government that only required Movant to plead guilty to "three counts of 924(c)." *See id.* at 54:18-23. Ms. Mollison explained that Movant was aware the negotiated plea offer came with a 21-year term of

imprisonment at the very least, although Movant expressed concern regarding that minimum sentence. *See id.* at 54:24-55:3.

The Government then asked Ms. Mollison about Paragraph 3 of the Plea Agreement and whether she reviewed it with Movant. To recap, Paragraph 3 stated that Movant "underst[ood] and acknowledge[d] that as to Counts 2, 8, and 12 [of the Indictment], the Court must impose a mandatory minimum sentence of 7 years consecutive to each other on each count" and that "[t]he Government and [Movant] agree[d] to recommend a joint total sentence of 21 years imprisonment." *Id.* at 57:19-58:4. Ms. Mollison testified that she reviewed Paragraph 3 with Movant and stated that Movant clearly understood that a 21-year term of imprisonment was the shortest term of imprisonment he could receive as a result of pleading guilty to Counts 2, 8, and 12. *See id.* at 58:7-17. Ms. Mollison maintained that at no point in her dealings with Movant did she assure him that he would receive a term of imprisonment shorter than 21 years or that his sentence on Counts 2, 8, and 12 would run concurrently with one another. *See id.* at 59:1-16. Ms. Mollison testified that she reviewed Movant's presentence investigation report with him, which also made clear that the shortest sentence he could receive was 21 years. *See id.* at 61:10-20, 71:15-20. Ms. Mollison testified that she did not recall Movant directing her to file an appeal on the day of his sentencing. *See id.* at 62:24-63:1. Nor did she recall Movant expressing any surprise at the sentence that Judge Moore imposed. *See id.* at 63:2-4.

Ms. Mollison testified that it is her general practice to discuss with her clients their right to appeal within a few days of their sentencing. *See id.* at 66:25-67:13. However, Ms. Mollison admitted she could not remember the specific details of her post-hearing meeting with Movant. *See id.* The Government then asked Ms. Mollison if she recalled Movant showing interest in pursuing an appeal, and she responded that she did not remember him asking for one. *See id.* at

67:14-16.  Ms. Mollison testified that she would have filed an appeal if Movant directed her to do so, even if she thought the appeal would be frivolous, as it is always her client's decision to file an appeal.  *See id.* at 67:17-23.  Ms. Mollison expressed her view that Movant did not have grounds to appeal because of the appellate waiver to which he agreed and because he received the lowest sentence possible given the offenses.  *See id.* at 67:24-68:6.

The Government next asked Ms. Mollison about the closing form she prepared for Movant's case.  *See id.* at 68:16-17.  Ms. Mollison testified that, on the closing form, she indicated Movant did not intend to file an appeal.  *See id.* at 68:22-69:4.  The Government also asked Ms. Mollison about the close-out letter she sent Movant, and Ms. Mollison indicated that the template on which she sent the letter was significant as it was the template her office used when a client did not plan to file an appeal.  *See id.* at 69:5-22.

Ms. Mollison stated that she met with Movant several times after his sentencing due to the restitution Judge Moore imposed in his case; however, Movant did not express a desire to file an appeal during any of their post-sentencing meetings.  *See id.* at 70:16-71:1.  Ms. Mollison also stated that she did not promise Movant a seven-year sentence if he pled guilty to Counts 2, 8, and 12 and did not she tell Movant to disregard the Plea Agreement's recommended sentence of 21 years in prison.  *See id.* at 71:2-14.  According to Ms. Mollison, she told Movant that she hoped Judge Moore would impose the 21-year prison sentence recommended in the negotiated Plea Agreement.  *See id.* at 72:4-7.

Ms. Mollison also testified that Ms. Delice spoke with her in her office only once during the life of Movant's criminal case, and that meeting occurred in August 2022.  *See id.* at 72:16-22.  Ms. Mollison stated that Ms. Delice did not ask her to file an appeal on her son's behalf. *See id.* at

72:23-25.

On cross-examination, Ms. Mollison conceded that the notes she took during her post-sentencing meeting with Movant were ambiguous to the extent they did not indicate whether Movant wanted to file an appeal. *See id.* at 78:6-10. Ms. Mollison testified that even up until the time of pleading guilty, Movant voiced concerns as to the 21-year sentence he would receive. *See id.* at 83:1-5. Despite Movant's concerns, Ms. Mollison testified that she did not recall speaking to Movant about the length of his sentence after his sentencing hearing, nor did she recall meeting with Movant's family after his sentencing hearing. *See id.* at 83:11-84:4. Ms. Mollison stated, however, that she continued receiving phone calls from Movant's parents in the months after his sentencing but that her conversations did not mention Movant's desire to appeal. *See id.* at 84:22-86:7.

On the Government's redirect, Ms. Mollison testified that she would not have refused to file an appeal on Movant's behalf, and she would have never told Movant's family members that she was refusing to file an appeal on his behalf. *See id.* at 87:16-25. Again, Ms. Mollison testified that Movant never expressed surprise at the sentence Judge Moore imposed nor did he ask her to file an appeal. *See id.* at 88:1-7.

### 4.  *Closing Argument*

#### a.  <u>*Movant's Closing Argument*</u>

In closing, Movant cited *Garza v. Idaho*, 586 U.S. 232 (2019) and *Roe v. Flores-Ortega*, 528 U.S. 470 (2000) to argue that under established Supreme Court precedent, if a criminal defendant directs his attorney to file an appeal and his attorney ignores that directive, courts should presume that the criminal defendant has experienced prejudice and his right to the effective assistance of counsel guaranteed by the Sixth Amended has been violated. *See id.* at 90:14-22.

Movant argued that, under the relevant standard, to carry his burden, he must prove that he communicated to Ms. Mollison that he directed her to file an appeal. *See id.* at 90:23-25. Movant asserts that he made this showing not only through his own testimony but also through his mother's testimony. *See id.* at 91:1-11. Movant claimed that his testimony was credible because he made statements that were against his interests, such as when he acknowledged that he agreed to the appeal waiver before Judge Louis at his change-of-plea hearing. *See id.* at 91:12-19. For further support, Movant referenced the fact that Ms. Mollison could not recall the details of her conversation with Movant as it concerned his right to an appeal. *See id.* at 91:20-92:6. Aside from this position, Movant also suggests that his continued pursuit of discovery in the aftermath of his discovery indicates that he was indeed attempting to seek some kind of postconviction relief. *See id.* at 92:7-21.

### b.   *The Government's Closing Argument*

The Government argued that the merits of Claim One turned on the credibility of the witnesses and that Movant failed to show that he was a credible witness at the evidentiary hearing. *See id.* at 97:18-24. The Government asserted that Ms. Mollison presented the most credible testimony, which documentary evidence supported. *See id.* at 97:24-99:13.

## II.   LEGAL STANDARDS

### A.   Section 2255

The grounds for collateral attack on final judgments under section 2255 are "extremely limited." *United States v. Marsh*, 548 F. Supp. 2d 1295, 1300 (N.D. Fla. 2008). A prisoner is entitled to relief under § 2255 if the court imposed a sentence that (1) violated the Constitution or laws of the United States, (2) exceeded its jurisdiction, (3) exceeded the maximum authorized by law, or (4) is otherwise subject to collateral attack. *See* 28 U.S.C. § 2255(a).

**B.      Ineffective Assistance of Counsel**

The Sixth Amendment to the United States Constitution guarantees criminal defendants the right to assistance of counsel during criminal proceedings.  *See Strickland v. Washington*, 466 U.S. 668, 684-85 (1984).  When assessing counsel's performance under *Strickland*, the Court employs a strong presumption that counsel "rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment."  *Id.* at 690.  "[T]he Sixth Amendment does not guarantee the right to perfect counsel; it promises only the right to effective assistance[.]"  *Burt v. Titlow*, 571 U.S. 12, 20 (2013) (alterations added; citation omitted).

To prevail on a claim of ineffective assistance of counsel, a movant must demonstrate both (1) that counsel's performance was deficient and (2) a reasonable probability that the deficient performance prejudiced the defense.  *See Strickland*, 466 U.S. at 687-88.  To establish deficient performance, the movant must show that, considering all the circumstances, "counsel's conduct fell 'outside the wide range of professionally competent assistance.'"  *Cummings v. Sec'y for Dep't of Corr.*, 588 F.3d 1331, 1356 (11th Cir. 2009) (quoting *Strickland*, 466 U.S. at 690); *see also Harrington v. Richter*, 562 U.S. 86, 104 (2011) ("To establish deficient performance, a person challenging a conviction must show that counsel's representation fell below an objective standard of reasonableness.").  Strategic choices made after thorough investigation of the law and facts relevant to plausible options are virtually unchallengeable.  *See Strickland*, 466 U.S. at 690-91. The court's review of counsel's performance should focus on "not what is possible or 'what is prudent or appropriate, but only [on] what is constitutionally compelled.'"  *Chandler v. United States*, 218 F.3d 1305, 1313 (11th Cir. 2000) (en banc) (footnote omitted; quoting *Burger v. Kemp*, 483 U.S. 776, 794 (1987)).  Counsel is not ineffective for failing to raise non-meritorious issues,

*see Chandler v. Moore*, 240 F.3d 907, 917 (11th Cir. 2001); nor is counsel required to present every non-frivolous argument, *see Dell v. United States*, 710 F.3d 1267, 1282 (11th Cir. 2013).

Regarding the prejudice component, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* A court need not address both prongs of *Strickland* if the movant makes an insufficient showing on one of the prongs. *See id.* at 697.

## III.    DISCUSSION

Movant argues under Claim 1 of the Motion that Ms. Mollison rendered constitutionally ineffective assistance of counsel when she failed to pursue an appeal after he directed her to do so. *See* ECF No. [1] at 4; ECF No. [1-1] at 6. Movant claimed that Ms. Mollison refused his request to file an appeal because, in her view, he did not have grounds to appeal as he had waived his right to appeal when he pleaded guilty. See ECF No. [1-1] at 6. Movant asserts that he cannot waive his right to an appeal and that Ms. Mollison violated his Fifth and Sixth Amendment rights when she failed to file an appeal despite his directive to do so. *See id.* Movant further asserted that, but for Ms. Mollison's failure to file an appeal, he would not be serving a 21-year sentence in federal prison.[4]

In its Response, the Government argued, with respect to Claim 1 of the Motion, that Movant's unelaborated claim that Ms. Mollison failed to file an appeal is insufficient to show that Ms. Mollison violated his constitutional rights when viewed in light of the record. *See* ECF No. [8] at 7-9. The Government asserts that Movant cannot claim that he was not properly advised of

---

[4] In reviewing the arguments Movant raised under Claim 1 of the Motion, the undersigned noted that nowhere did Movant argue that Ms. Mollison failed to consult with him regarding his right to an appeal. *See generally* ECF No. [1] at 6; ECF No. [1-1] at 6-7.

his appellate rights as Judge Louis — during his change-of-plea hearing — and Judge Moore — during his sentencing hearing — advised him of his limited right to appeal. *See id.* at 7-8. Additionally, the Government argues that Movant's Claim 1 should fail because he fails to provide any factual detail concerning his purported request for an appeal; namely, Movant does not tell the Court when he requested an appeal, why he wanted an appeal, Ms. Mollison's response to his request for an appeal, or the factual detail showing that he had been diligently pursuing his right to appeal his sentence. *See id.* at 8. Finally, the Government argues that Movant's claim that the outcome of his criminal proceedings would have been different if Ms. Mollison had filed an appeal is meritless as he received the mandatory minimum sentence of seven years as to each count of the Indictment to which he pled guilty, meaning he had no grounds on which to appeal his sentence under the appeal waiver in his Plea Agreement. *See id.* at 8-9.

In his Reply, Movant again argues that the outcome of his case would have been different had Ms. Mollison filed an appeal as he directed her to do so. *See* ECF No. [12] at 2-3. Movant claims that he understood he would receive three concurrent seven-year sentences in exchange for his guilty plea to Counts 2, 8, and 12. *See id.* at 3. Movant claims that, had he understood the sentence he faced, he would have never pleaded guilty. *See id.* at 5.

For the reasons explained below, the undersigned recommends that Judge Moore deny Claim 1 of Movant's motion.

## A.    Credibility Findings

In making credibility determinations, the undersigned weighs the witnesses' testimony, considering such factors as their interests in the case, the consistency or inconsistency of their testimony, and their demeanor on the stand. *See Rizo v. United States*, 662 F. App'x 901, 912 (11th Cir. 2016) (using similar factors to make credibility determination in § 2255 proceeding

(citing *United States v. Ramirez-Chilel*, 289 F.3d 744, 750 (11th Cir. 2002))); *Pierrelus v. United States*, No. 18-CV-24996, 2021 WL 724922, at *4 (S.D. Fla. Jan. 1, 2021) (same).  The consistency or inconsistency of testimony and the plausibility or implausibility of testimony are also relevant considerations when determining witness credibility. *Pierrelus*, 2021 WL 724922, at *4 (citing to *Anderson v. City of Bessemer City, N.C.*, 470 U.S. 564, 575 (1985)).  After weighing these factors, the undersigned finds Ms. Mollison's testimony was fully credible.  Conversely, the undersigned finds that parts of Movant and his mother's respective testimony was not credible.  At best, Movant and his mother are unreliable historians.  At worst, Movant and his mother fabricated favorable evidence to support Movant's claim.

### 1.    Movant's Testimony regarding the Minimum Sentence He Faced

To start, Movant's claim that he thought he faced three concurrent seven-year terms of imprisonment is not believable.  First and foremost, in his exchange with Judge Louis at his hearing on his Motion for Substitution of Counsel, he said:

> Your Honor, I'm only 23. I was 22 when I first got my first plea offer. I'm still trying – they're still trying to get me to sign for 21 years as that's the best plea they could do for me.  My lawyer's telling me that's the plea they're willing to offer me. When I told her that's like my whole life you want me to do again, and you mean to tell me I have one year to really live on this earth, just to sign to 21 years to be reborn again just in prison or in jail. Your Honor, I just -- I want to plead guilty but not to this 21 years. I know I don't deserve 21 years.

CR ECF No. [42] at 9:23-10:5.  This exchange makes clear that Movant knew exactly the sentence he faced.

Next, Movant's Plea Agreement plainly stated that "[t]he [G]overnment and [he] agree[d] to recommend a joint total sentence of 21 years' imprisonment."  CR ECF No. [31] at ¶ 3.  Judge Louis questioned Movant on this language during his January 25, 2023, change-of-plea hearing, and he confirmed that he understood the recommendation he and the Government were making to

Judge Moore. *See* CR ECF No. [41] at 22:21-23:4. And Movant told Judge Louis that no one — including Ms. Mollison — had promised him a sentence lower than the one jointly recommended in his Plea Agreement. *See id.* at 16:4-22.

Then, at his sentencing hearing, Ms. Mollison zealously argued for the imposition of the jointly recommended 21-year term of imprisonment, and, following that argument, Judge Moore imposed the sentence the Parties jointly recommended. *See* CR ECF No. [51] at 5:5-8:3, 11:18-22. After Judge Moore imposed his sentence, Movant did not voice an objection. *See generally id.* Tellingly, Movant, who has repeatedly been very vocal with the Court, did not object on this occasion. For example, when Movant appeared before Judge Louis, he voiced concerns about not being prepared to plead guilty as he felt he had insufficient time to review the evidence against him. *See* CR ECF No. [45] at 8:11-9:21. And, when he felt that Ms. Mollison was not acting in his best interests, he filed a Motion for Substitution of Counsel and directly raised his concerns with Judge Louis at the hearing. *See generally* CR ECF No. [42]. Movant likewise felt comfortable speaking before Judge Moore at sentencing when he apologized to the Court, community, and his family for his actions. *See* CR ECF No. [51] at 4:12-5:3. He even felt comfortable correcting Judge Moore when he mispronounced Movant's name. *See id.* at 13:8-11. But, he did not raise any objection after sentenced was imposed.

In short, the record in this case evidencing Movant's knowledge of the potential sentence he faced along with Movant's pattern of vocalizing any concerns in his case with the Court compared to his failure to object to the sentence the Court imposed refute his claim that Ms. Mollison promised him three concurrent seven-year terms of imprisonment.

   **2.**   **Movant and his Mother's Testimony regarding Request for Appeal**

Even if Movant's proffered reason for wanting an appeal were credible, the undersigned

would still give his and his mother's testimony little weight, as the testimony and evidence in this case contradicts Movant and his mother's claim that he directed Ms. Mollison to file an appeal.

Taking Ms. Delice's testimony first, Ms. Delice claimed that, following her son's sentencing, she and her husband, who was gravely ill and has since passed, went to Ms. Mollison's office in person. *See* ECF No. [27] at 45:9-46:8. Ms. Mollison's testimony that Ms. Delice and her husband only visited her in person once in August 2022 — several months before Movant's sentencing — contradicts Ms. Delice's account of events. *See id.* at 84:5-18. Indeed, Ms. Mollison's file only reflects a single visit by Movant's parents in August of 2022. *See id.* at 72:16-22; 84:5-9. Ms. Mollison would likely have remembered if both Movant's parents had visited her after Movant's sentencing if only because Movant's father was seriously — and likely visibly — ill with thyroid cancer. *See* CR ECF No. [51] at 7:2-5 ("His father unfortunately is very elderly. He's also in poor health. As Mr. Delice mentioned, he's currently hospitalized undergoing chemotherapy for thyroid cancer."). By comparison, Ms. Mollison had specific recollections of speaking with Movant's parents over the telephone several months after sentencing to coordinate the mailing of discovery to Movant's home. *See* ECF No. [27] at 84:5-85:15.

Next, the undersigned views Movant and his mother's claims in light of Movant's knowing and voluntary waver of his right to an appeal. At his change-of-plea hearing, Judge Louis explained the following to Movant:

> If you plead guilty, you cannot appeal the conviction because you're admitting your guilt, but you could otherwise appeal the sentence that's imposed. What your plea agreement says is you're agreeing not to appeal the sentence or the order of forfeiture and you'd only have an appeal in limited circumstances; for example, if the Government files an appeal or if the sentence exceeds the maximum permitted by statute or is the result of an upward departure or upward variance.

CR ECF No. [41] at 15:16-22. Following this explanation — and after a brief exchange with Movant, Judge Louis found that Movant knowingly and voluntarily waived his right to an appeal.

18

*See id.* at 15:23-16:3.  Equipped with this knowledge, Movant knew from the moment Judge Moore sentenced him that he had no grounds on which to file his appeal as the sentence imposed was the lowest sentence he could have received under the controlling statute.  *See* ECF No. [51] at 5:5-15 (arguing on behalf of Movant for the imposition of 21-year sentence which "[was] the minimum sentence in [his] case, the guideline sentence").  Against this factual backdrop, Movant and his mother's account of events regarding his request for an appeal do not make sense.

Even absent this factual record, Movant and his mother's credibility face an uphill battle when compared with the testimony of Ms. Mollison.  The only potentially corroborating evidence Movant referenced is an email in which he claims he communicated his desire to file an appeal with Ms. Mollison.  *See* ECF No. [27] 36:23-37:3.  However, Movant states that he no longer has a copy of that email as the system he used to send it automatically deletes all email communications after six months.  *See id.*  In contrast, the only documentary evidence presented at the hearing on this issue supports Ms. Mollison's credibility and cuts against Movant and his mother's credibility.  Namely, at the evidentiary hearing, the Government introduced the closing form and close-out letter Ms. Mollison prepared in relation to Movant's case.  Concerning the closing form, Ms. Mollison indicated that Movant did not plan to file an appeal.  *See* ECF No. [27] at 68:16-23; ECF No. [25-9] at 1.  And with respect to the close-out letter, Ms. Mollison testified that she chose the template that her office uses when a client has elected not to proceed with an appeal.  *See* ECF No. [27] at 69:5-17; *see generally* [25-10].  For clients who elect to file an appeal, her office uses a different template that explains the appellate process, and tellingly, Ms. Mollison did not use that template here.  *See* ECF No. [27] at 69:5-22.

Thus, the Court finds Ms. Mollison's testimony to be credible.  Ms. Mollison is an experienced attorney who has exclusively practiced criminal law for the last decade and has

represented hundreds of criminal defendants.  *See* ECF No. [27] at 51:15-52:13.  *See also Robinson v. United States*, No. 16-20314-CR, 2021 WL 2417711, at *4 (S.D. Fla. Mar. 10, 2021), *report and recommendation adopted,* No. 16-20314-CR, 2021 WL 2414165 (S.D. Fla. June 14, 2021) (highlighting defense counsel's extensive experience as one of several factors bearing on the witness's credibility); *United States v. Hale*, No. CR 07-0385-SW-C, 2010 WL 2105141, at *4 (S.D. Ala. May 24, 2010) (noting defense counsel's experience as a criminal lawyer, among other factors, when making credibility assessment).  Not only is Ms. Mollison experienced in this area of law, but her version of events was corroborated with documentary evidence and was consistent with Defendant's statements and actions leading up to the sentencing.  For all these reasons, the Court credits Ms. Mollison's version of events and finds her to be credible.

   **B.**     **Merits**

   In *Roe v. Flores-Ortega*, the Supreme Court held that *Strickland* governs claims of ineffective assistance of counsel for failure to file an appeal.  *See* 528 U.S. at 476-77.  Regarding the first prong of *Strickland* — whether counsel's representation fell below an objective standard of reasonableness — the Supreme Court reaffirmed that "an attorney who fails to file an appeal on behalf of a client who specifically requests it acts in a professionally unreasonable manner *per se*." *Gomez-Diaz v. U.S.*, 433 F.3d 788, 791-92 (11th Cir. 2005) (citing *Flores-Ortega*, 528 U.S. at 477).  In such cases, the Court presumes prejudice, and the movant is entitled to resentencing and a new appeal with no further showing.  *See Flores-Ortega*, 528 at 483 ("The . . . denial of the entire judicial proceeding itself, which a defendant wanted at the time and to which he had a right, . . . demands a presumption of prejudice.").

   Even if a client has not specifically asked his counsel to file an appeal, counsel generally must "consult with the defendant about an appeal when there is reason to think either (1) that a

rational defendant in the defendant's position would want to appeal (for example, because there are nonfrivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing." *Id.* at 480; *see also Thompson v. U.S.*, 504 F.3d 1203, 1206 (11th Cir. 2007). When determining whether a rational defendant would want to appeal, relevant factors include whether the conviction follows a guilty plea, whether the defendant received the sentence bargained for as part of a plea agreement, whether the plea agreement waived appellate rights, and whether there are nonfrivolous grounds for appeal. *See Flores-Ortega*, 528 U.S. at 480; *see also Otero v. United States*, 499 F.3d 1267, 1270 (11th Cir. 2007). If "counsel's constitutionally deficient performance deprives a defendant of an appeal that he otherwise would have taken," *Garza*, 586 U.S. at 237 (quoting *Flores-Ortega*, 528 U.S. at 484), then the court must apply a "presumption of prejudice regardless of how many appellate claims were foreclosed[,]" *id.* at 244.

### 1.     Movant's Instruction to File an Appeal

As the undersigned explained in great detail above, the Parties in this case disagree on whether Movant directed Ms. Mollison to file an appeal. However, the undersigned finds that Movant and his mother's testimony that he directed Ms. Mollison to file an appeal are not credible given that (1) Movant's reasons for wanting an appeal are also incredible, (2) Movant knowingly and voluntarily waived his right to an appeal, and (3) Movant and his mother's account of events are inconsistent with Ms. Mollison's testimony, which the undersigned finds credible. Accordingly, Movant fails to show that counsel was ineffective by disregarding a specific instruction to file a notice of appeal. *See Flores-Ortega*, 528 U.S. at 477.

### 2.     Movant's Right to Consult with Ms. Mollison about an Appeal

While Movant does not argue that Ms. Mollison failed to consult him about filing an

appeal, in the interest of completeness, the undersigned will also discuss whether Ms. Mollison should have consulted Movant about an appeal. As noted by the Eleventh Circuit, a "criminal defense lawyer is not under a *per se* constitutional obligation to consult with his or her client about an appeal." *Otero*, 499 F.3d at 1270. Rather, in "some cases, the Sixth Amendment requires consultation; in others, it does not." *Id.* The constitutional requirement only applies if counsel has a reason to think that (1) a rational convicted defendant would want to appeal or (2) that the convicted defendant has reasonably demonstrated a subjective interest in appealing. *See Flores-Ortega*, 528 U.S. at 480. The second basis does not apply here as the only evidence relied upon by Movant to establish that he showed any interest in appealing is his own self-serving testimony at the evidentiary hearing, which, for the reasons discussed above, is not credible. Thus, the only question is whether a rational defendant under the same circumstances as Movant would have wanted to appeal. *See Flores-Ortega*, 528 U.S. at 480. To determine whether a rational defendant would want to appeal, courts consider the following non-exhaustive factors: "[1] whether the conviction follows a guilty plea, [2] whether the defendant received the sentence bargained for as part of a plea agreement, [3] whether the plea agreement waived appellate rights, and [4] whether there are nonfrivolous grounds for appeal." *Fields v. United States*, 577 F. App'x 916, 919 (11th Cir. 2014) (per curiam) (citing *Flores-Ortega*, 528 U.S. at 480; *Otero*, 499 F.3d at 1270). The undersigned addresses each of these factors in turn.

First, Movant was convicted following a guilty plea pursuant to his negotiated Plea Agreement. *See generally* CR ECF No. [31]; CR ECF No. [41]. Movant's guilty plea indicates that he was "seek[ing] an end to judicial proceedings." *Flores-Ortega*, 528 U.S. at 480; *Francois v. United States*, No. 18-CR-60130, 2021 WL 5088835, at *9 (S.D. Fla. Oct. 13, 2021) ("Movant pled guilty . . . which indicate[d] his interest in ending the judicial proceedings. Moreover, Movant

received a sentence that was within the successfully lowered range of what his counsel would have advised him was possible. Therefore, there was no reason . . . to believe that Movant would want to appeal."), *report and recommendation adopted*, No. 18-CR-60130, 2021 WL 5085353 (S.D. Fla. Nov. 2, 2021).

Second, Movant "received the sentence [he] bargained for" as part of his Plea Agreement. *Otero*, 499 F.3d at 1270; *see generally* CR ECF No. [51]. Whether a defendant received a bargained-for sentence at the bottom of the guidelines is a relevant consideration. *See Devine v. United States*, 520 F.3d 1286, 1288 (11th Cir. 2008). Here, Judge Moore imposed the shortest term of imprisonment permitted by statute when he imposed three consecutive terms of imprisonment for Movant's guilty plea to Counts 2, 8, and 12. *See Pendergrass v. United States*, No. 18-CV-60058, 2021 WL 5310689, at *8 (S.D. Fla. Sept. 15, 2021) ("The second factor disfavors [the movant] because the plea agreement stated that he could receive up to life imprisonment if he was an armed career criminal, and [the movant] received a sentence at the very low end of the guidelines."), *report and recommendation adopted*, No. 18-CR-60058, 2021 WL 5300055 (S.D. Fla. Nov. 15, 2021), *aff'd*, No. 21-14510, 2022 WL 17958916 (11th Cir. Dec. 27, 2022).

Third, the Plea Agreement contained an appeal waiver. *See* CR ECF No. [31] at ¶ 11. At the January 25, 2023 change-of-plea hearing, Judge Louis specifically reviewed Movant's right to appeal his sentence, and Movant acknowledged that he was knowingly and voluntarily waiving that right as part of his Plea Agreement:

> **THE COURT**: And your agreement also contains what's called an appeal waiver at Paragraph 11. If you plead guilty, you cannot appeal the conviction because you're admitting your guilt, but you could otherwise appeal the sentence that's imposed. What your plea agreement says is you're agreeing not to appeal the sentence or the order of forfeiture and you'd only have an appeal in limited circumstances; for example, if the Government files an appeal or if the sentence

exceeds the maximum permitted by statute or is the result of an upward departure or upward variance.  Did you discuss the appeal waiver with your attorney?

[**MOVANT**]: Yes, Your Honor.

**THE COURT**: Do you understand the rights you're giving up?

[**MOVANT**]: Yes, Your Honor.

**THE COURT**: I find the appeal waiver is a knowing, voluntary and fully informed waiver.

CR ECF No. [41] at 15:15-16:3 (emphasis added).  Based on this record, there was no reason for counsel to believe that Movant would want to appeal contrary to his representations to the Court at the change of plea and sentencing hearings.  *See Otero*, 499 F.3d at 1270 (holding that whether a defendant "waived some or all appeal rights" is a "highly relevant factor" (citing *Flores-Ortega*, 528 U.S. at 480)).

The final factor is whether there were "nonfrivolous grounds for appeal." *Flores-Ortega*, 528 U.S. at 480.  None exist here.  Movant pled guilty, received the sentence bargained for, and knowingly and voluntarily waived his right to appeal, as evidenced by his answers to Judge Louis's questions about the appeal waiver during his change-of-plea hearing.  *See* CR ECF No. [41] at 15:15-16:3.  No rational defendant would have wanted to appeal under these circumstances.

**IV.    CONCLUSION**

For the foregoing reasons, I respectfully **RECOMMEND** that Claim 1 of Movant Yves Delice's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence, **ECF No. [1]**, be **DENIED**.

Pursuant to Local Magistrate Rule 4(b), the parties have fourteen (14) days from the date of being served with a copy of this Report and Recommendation within which to file written objections, if any, with the Honorable K. Michael Moore, United States District Judge.  Failure to

timely file objections shall bar the parties from a *de novo* determination by the District Judge of an issue covered in the Report and shall bar the parties from attacking on appeal unobjected-to factual and legal conclusions contained in this Report except upon grounds of plain error if necessary in the interest of justice. *See* 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 149 (1985); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989); 11th Cir. R. 3-1.

**DONE and ORDERED** in Chambers in Miami, Florida on February 4, 2025.

**MARTY FULGUEIRA ELFENBEIN**
**UNITED STATES MAGISTRATE JUDGE**

cc:  All Counsel of Record